

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

September 12, 1973

The Honorable Robert E. Stewart
Commissioner
State Banking Department
John H. Reagan Building
Austin, Texas

Dear Mr. Stewart:

Opinion No. H-100

Re: Whether unmanned,
automated, 24-hour
bank facilities violate
the Texas Banking
Code, 1943

Your request for an opinion from this office on the question involved, notes that unmanned automatic teller machines are now serving Bank-Americard and Master Charge customers in a number of Texas banks. Using special magnetically-keyed cards from the bank and a digit code, the customer can activate the automated teller at any hour on any day of the week. With it he can: (1) withdraw cash from his bank checking, savings or other account - up to a specified amount; (2) deposit to his checking or savings account; (3) transfer money from his checking to his savings account, from his savings to his checking account, or to either from another account; and (4) make payments to a credit card account with cash, check, or money order, or by deduction from a checking or savings account.

You further advise us that Mr. Dale Alley, Review Bank Examiner of the State Banking Department, made an examination of the uses of the automatic teller machines and reported, in part:

> "The banks advertise 24 hour banking, seven days a week including holidays, and the transactions handled by the machines are basically the same at each bank. Refer to the receipt forms for a detailed listing of the transactions.

> "Although each of the banks empty the machines at different times during the day, all follow the same

procedure as far as recording the transactions
that occur on holidays and over the weekend. The
machines are equipped with a dater and timer,
and all transactions reflect the date and time of
day that they occurred on the bank's copy of the
transaction slip. Cash withdrawals made through
the machine are limited to $100.00 during any one
day, while deposits may be made for any amount.
All transactions, including withdrawals and depo-
sits that occur after the regular banking hours are
recorded as of the next regular business day. If
the maximum amount possible is withdrawn on
Friday after the close of business, on Saturday,
and on Sunday, the total amount will be entered
on the customer's account as if it has occurred on
the following Monday. The same is true of all other
transactions. Receipts are issued on each transac-
tion; however, each receipt contains a statement
to the effect that all transactions are subject to proof
and verification. "

Article 342-910a reads, in part, as follows:

"Section 1. Legal Holidays For Banks Or Trust
Companies. Notwithstanding any existing provisions
of law relative to negotiable or non-negotiable instru-
ments or commercial paper, but subject to the pro-
visions of Section 2 of this article, only the following
enumerated days are declared to be legal holidays
for banking purposes on which each bank or trust
company in Texas shall remain closed; Saturdays,
Sundays, January 1, the third Monday in February,
the last Monday in May, July 4, the first Monday
in September, the second and fourth Mondays in
October, the fourth Thursday in November, and
December 25.

"All such legal holidays shall be neither business days nor banking days under the laws of this State or the United States, and any act authorized, required or permitted to be performed at or by any bank or trust company on such days may be performed on the next succeeding business day and no liability or loss of right of any kind shall result therefrom to any bank or trust company.

"Sec. 2.  Alternative Legal Holidays For Banks Or Trust Companies.  Any bank or trust company may elect to designate days on which it may close for general banking purposes pursuant to the provisions of this section, instead of Section 1 of this article, provided that any bank or trust company which has elected to be governed by this section shall remain closed on the following enumerated days, which days are declared to be legal holidays for banking purposes: Sundays, January 1, the third Monday in February, the last Monday in May, July 4, the first Monday in September, the second and fourth Mondays in October, the fourth Thursday in November, and December 25.  When the dates January 1, July 4 or December 25 fall on Saturday, then the Friday immediately preceding such Saturday shall also be a legal holiday for banking purposes on which each bank or trust company shall remain closed, and when such dates fall on Sunday, then the Monday next following each Sunday shall also be a legal holiday for banking purposes on which each bank or trust company which has elected to be governed by this section shall remain closed.  Except as herein provided, any bank or trust company doing business in this State may, at its option, elect to be governed by this section and close for general banking purposes either on Saturday or on any other weekday of any week in the year provided . . . . .

[Paragraphs (a), (b) and (c) of § 2 provide the
method by which a bank may adopt and use the
alternative legal holidays.]

" . . . .

" If any bank or trust company elects to close
for general banking purposes on Saturday or any
other weekday as herein provided, it may, at its
option, remain open on such day for the purpose
of performing limited banking services. Notice
of election to perform limited banking services
shall be contained in the resolution and notices,
above provided, with respect to closing for general
banking purposes. Limited banking services may
include such of the ordinary and usual services
provided by the bank as the Board of Directors
may determine, except the following: making loans,
renewing or extending loans, certifying checks,
issuing cashier's checks, and providing access to
safety deposit boxes or to property held in safe-
keeping by the bank.

"Such day upon which such bank or trust company
may elect to close for general banking purposes
shall with respect to such institution be treated as
a legal holiday for all purposes and not a business
day; provided that if such bank shall elect to perform
limited banking services on such day, the same
shall not be deemed a legal holiday for the perfor-
mance of limited banking services. Any bank or
trust company which elects to close for general
banking purposes on Saturday or any other weekday
but which elects to perform limited banking services
shall not be subjected to any liability or loss of rights
for performing limited banking services or refusing
to perform any other banking services on such day.

" . . . .

> "Sec. 3. Discrimination Prohibited. The provisions
> of Section 2 of this article shall be completely per-
> missive with each individual bank or trust company
> in this State. . . ." (emphasis added)

In the event that a bank adopts the alternative plan set out, it may remain open six days, of which one is for limited banking purposes.

Long prior to the enactment of the Banking Code of 1943, Article 4591 specified the legal holidays,

> " . . . on which all the public offices of the
> state may be closed and shall be considered and
> treated as Sunday for all purposes regarding the
> presenting for the payment of acceptance and of
> protesting for and giving notice of the dishonor of
> bills of exchange, bank checks and promissory
> notes placed by the law upon the footing of bills
> of exchange."

Apparently banks had a question as to their potential liability in the event they closed on commonly celebrated holidays which were not designated as legal holidays. Therefore, in 1947, the Legislature adopted the predecessor of Article 342-910a stating that this uncertainty as to liability created an emergency. (Acts 1947, 50th Leg., p. 424, ch. 230).

The Act has been amended from time to time since then, the last amendment having been in 1971 (Acts 1971, 62nd Leg., ch. 108, p. 872) which stated as the fact creating an emergency: "The need for moderni- zation and clarification of the Texas Banking Code of 1943, so that banks may better attract and keep employees to serve their communities. . . ."

It is apparent that it was not the intent of the Legislature in adopting the present provisions of Article 342-910a to add restrictions to hours during which a bank might conduct its business. Quite to the contrary, it is apparent that the statute, as it developed, was developed with the thought of freeing banks from restriction and to give to them an option concerning

the days and hours upon which they would be open for business and whether they were to be open for general banking purposes or only for limited banking services.

There is no Federal regulation which would assist.  The interpretive ruling of the Bureau of the Comptroller of the Currency, 12 C.F.R., § 7.7435, states:

> "There is no Federal law governing holidays for national banks.  Local counsel should be consulted on the question of possible liability under State laws affecting the validity of transactions consummated on days designated legal holidays by State authorities and also on the question of possible liability if the bank remains closed on any day not designated a legal holiday by State authorities."

The validity of using automated machines for banking services, including the dispensing of cash, on the premises of a bank has been upheld in Attorney General Opinion M-915 (1971).  The main question there was whether such an arrangement would violate the constitutional prohibition of branch banking.  It was held it would not.

In answering your questions concerning the use of such automated machines on a twenty-four hour basis, we cannot ignore the fact that for many years banks have used night depositories available for use seven days a week, 24 hours a day.

In view of the fact that the automated machine about which you inquire does not result in the entry of any transaction upon the books of a bank until the next business day, we assume that all of its functions, with the exception of the withdrawal of a packet of cash, could be performed either by use of the night depository to advise the bank of transactions desired or by conducting one's banking business through the mails.

Thus it would seem that the only function served by the automated machines at this time which is new or novel or cannot otherwise be performed

under existing procedures is that a customer of a bank may withdraw a limited amount of cash by making a charge against his account by using a card, just as he makes a charge against it when he cashes a check.

It is difficult for us to conceive that this alone would be sufficient to render the bank "open for business". No human discretion is involved. There are no negotiations. Only approved customers (those to whom cards have been issued) may make use of the service. If this sort of an activity is sufficient to constitute the bank "open", then what of the myriad of other activities that take place in our large metropolitan banks at night and on holidays? Is the bank open if, on a "closed" day or legal holiday an employee feeds information into a computer which results in the recording of a transaction on a customer's account? Is it open merely because its trust officers, for example, may be available to discuss trust problems with its customers?

It is our opinion that for a bank to be open either generally or in the limited sense spelled out in Article 342-910a it must be open to the public for physical transactions and the completion of transactions involving more than the mechanical dispensing of packets of money. Reverting to the stated purpose of the 1971 amendment to the Act "so that banks may better attract and keep employees to serve their communities," it is obvious that the automated machine, replacing the need for an employee at late hours serves much the same purpose. At the same time they fulfill the needs of customers who cannot conclude all their banking by mail or in person and make it unnecessary to require employees to work longer hours and on week-ends.

We would find it difficult to distinguish between an automated machine dispensing cash, on the one hand, and a night depository accepting deposits of cash, on the other. If one activity results in the bank being considered open then we think the other would also.

We have found no Texas case directly in point. However, Hewitt v. First National Bank, 262 S.W. 161 (Tex. 1923) is helpful. In that case, notice to stop payment of a check was given to a bank's cashier on Sunday which was then, as now, a legal holiday. Nevertheless, the Supreme Court held the notice to be valid, saying:

"We do not think there is any merit in Appellee's contention that the notice to Powell was ineffectual because the same was given on Sunday. It is true that Sunday is a legal holiday, and, with certain exceptions, it is unlawful to labor that day. . . . But Powell was not asked to perform any labor on Sunday. Certain information was imparted to him, upon which he was requested to act the next day."

In our opinion, the activities conducted through an automated, unmanned machine are no less lawful.

It is our opinion, accordingly, that the use of an unmanned, automated, 24-hour teller machine as described in your request does not violate the provisions of the Texas Banking Code, 1943.

## SUMMARY

An automatic, unmanned, teller machine operating 24 hours per day, seven days per week which accepts deposits and transfers of funds and dispenses cash in limited amounts and in pre-prepared packets, where all transactions are recorded as of the next regular business day, does not violate Article 342-910a setting the legal holidays for banks.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:


LARRY F. YORK, First Assistant


DAVID M. KENDALL, Chairman
Opinion Committee